**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **ECREDIT SOLUTIONS LLC,** | § | |
| | § | |
| **Plaintiff,** | § | **Case No. 6:20-cv-304-ADA** |
| | § | |
| **v.** | § | |
| | § | |
| **VYZE, INC.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT VYZE, INC.'S RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ..................................................................................................................... 5

II.  AUTHORITY ......................................................................................................................... 7

   A.  Motions to Dismiss under Fed. R. Civ. P. 12 ..................................................................... 7

   B.  Patent Eligibility under 35 U.S.C. § 101 ............................................................................ 9

   C.  Presumption of Validity Applies to § 101 and Patent Ineligibility Must Be Proven by Clear and
Convincing Evidence ................................................................................................................. 11

III.  ARGUMENT ........................................................................................................................ 12

   A.  Claim 1 is not directed to the abstract idea of extending financing to customer ............................ 12

   B.  Defendant's Motion Must Be Denied Because Claim Construction is Necessary and Fact Issues
Exist, Which Cannot Be Resolved Under Rule 12 .................................................................... 15

   C.  As Defendant Fails to Consider Any Claim from the Perspective of a Person Having Ordinary
Skill in the Art, the Motion is Deficient on Its Face ................................................................ 16

   D.  Defendant Fails to Clearly and Convincingly Demonstrate That Any of the Claims are Invalid
under § 101 ................................................................................................................................. 17
      i.  Dependent Claims ................................................................................................................ 19

   E.  Defendant's reliance on *Credit Acceptance* is misplaced ............................................................ 20

   F.  Defendant's § 101 Defense is Barred by § 282(b), Which Is Not a Permitted Litigation Defense as
§ 101 is not "Specified in Part II as a Condition for Patentability" ........................................ 22

VI.  CONCLUSION ..................................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3 d 1121 (Fed. Cir. 2018) .............................9

*Aeritas, LLC v. Sonic Corp.*, No. 6:20-cv-00103-ADA (Mar. 13, 2020).......................................9

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. __, 134 S. Ct. 2347 (2014) .............10, 11, 17, 18

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).............................................................8

*Bilski v. Kappos*, 130 S. Ct. 1328 (2010) ..................................................................9, 10, 11, 18

*Card Verification Solutions, Inc. v. Citigroup*, No. 13-C-6339, 2014 U.S. Dist. LEXIS 137577 (N.D. Ill. Sept. 29, 2014)....................................................................................................12

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013)....................................12

*Credit Acceptance Corp. v. Westlake Services*, 859 F.3d 1044 (Fed. Cir. 2017) ..................20, 22

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980)........................................................................9

*Diamond v. Diehr*, 450 U.S. 175 (1981) ...............................................................9, 10, 11, 22

*Freeny v. Murphy Oil Corp.*, No. 2:13-CV-791-RSP, Dkt. No. 143 (E.D. Tex. May 22, 2015)............12

*Helios Software, LLC v. Spectorsoft Corp.*, No. 12-cv-081-LPS, 2014 U.S. Dist. LEXIS 135379 (D. Del. Sept. 18, 2014) ............................................................................................17

*In re Chinese Manuf. Drywall Prods. Liab. Lit.*, 759 F. Supp. 2d 822 (E.D. La. 2010)..............................8

*In re Katrina Canal Breaches Lit.*, 495 F.3d 191 (5th Cir. 2007) ................................................8

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010)................................8

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996)..................................................................................................16

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004)......................8

*Mayo Collaborative Servs. v. Prometheus Labs.*, 132 S. Ct. 1289 (2012) ...........................10, 11

*Microsoft Corp. v. i4i Ltd P'ship*, 131 S. Ct. 2238 (2011) ........................................................11

*MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373 (Fed. Cir. 2019) ...................................................9

*PNC Bank v. Secure Axcess, LLC*, Case No. CBM2014-00100, 2014 WL 4537440 (P.T.A.B. Sept. 9, 2014) ........................................................................................................................... 17

*Ramming v. US*, 281 F.3d 158 (5th Cir. 2001) ....................................................................... 8

*Slyce Acquisition v. Syte – Visual Conception*, No. W-29-cv-00257-ADA, 2020 U.S. Dist LEXIS 9451 (W.D. Tex. Jan. 10, 2020)...........................................................................................passim

*U.S. Bancorp v. Solutran, Inc.*, Case No. CBM2014-00076, 2014 WL 3943913 (P.T.A.B. Aug. 7, 2014) ................................................................................................................................... 17

## Statutes

35 U.S.C. § 282 .................................................................................................................... 22

35 U.S.C. § 282(a) ............................................................................................................... 11

35 U.S.C. Part II, §§ 100-212 .............................................................................................. 22

## Other Authorities

Hricik, D., Are the Courts Correct in Their Assumption that a Patent Issued on Non-patentable Subject Matter is Invalid?, located at http://patentlyo.com/patent/2012/08/are-the-courts-correct-in-their-assumption-that-a-patent-issued-on-non-patentable-subject-matter-is-invalid.html (Aug. 27, 2012) .............................................................................................. 23

https://vyze.com/consumer-financing/online-financing/, last accessed on May 26, 2020 .......... 14

## Rules

Fed. R. Civ. P. 8(a) ................................................................................................................ 7

## Regulations

37 C.F.R. §74622-24 ............................................................................................................ 10

## I.    INTRODUCTION

Despite authority from this Court stating that most § 101 motions are only appropriate after claim construction has been completed, it is now commonplace for nearly every patent defendant to file premature § 101 motions to dismiss, regardless of the merit of the assertions. This Motion is yet another example of this, and only serves to delay adjudication of Plaintiff's claims.

The '353 Patent, as understood by a Person Having Ordinary Skill in the Art ("PHOSITA"), generally relates a method for extending credit to a purchaser at a point-of-sale terminal that involves a method when various thresholds for creditworthiness and risk factors are exceeded.  A PHOSITA would generally understand that practicing the claims of the '353 Patent requires specially programmed point-of-sale terminals, computers, servers, and websites (and components thereto).  Thus, the '353 Patent covers eligible subject matter.

Claim construction is required here to determinate the appropriate scope of the claims. A proper claim construction and even a basic analysis of the Claim would show that "registering by a processor," "receiving by the processor," "sending by the processor," "determining by the processor" and "authorizing by the processor" are *all* steps done by a computer processor as part of the point-of-sale terminal technology.  Thus, the claim satisfies the machine-or-transformation test.  In its cursory analysis, Defendant ignores key portions of the specification that, under fundamental principles of claim construction, shed light on the scope of the claims.  Defendant's motion is, at best, premature.

Furthermore, in its Motion, Defendant fails to analyze (let alone mention the standard) the claims from the perspective of a PHOSITA, which is required under the law. Defendant's

motion, thus, should be summarily dismissed for failing to address this highly relevant standard to the analysis it wishes the Court to conduct.

Even if there was some merit to Defendant's motion, Defendant has not shown that the claims are invalid under § 101 by <u>clear and convincing evidence</u>.   Because Defendant's characterization of the claims "does not tie adequately the claim language to the purported abstract concept," Defendant has failed to meet its burden to show that any claim is directed to an abstract idea.  Even if the claims were directed to the purported abstract idea—which they clearly are not—Defendant provides no evidence that the purported abstract idea is a "fundamental truth[] or fundamental principle[] the patenting of which would pre-empt the use of basic tools of scientific and technological work."

The only evidence cited by Defendant—the '353 Patent itself—shows that the claims are drawn not to an abstract idea, and rather are specific improvements to existing technology in the field of point-of-sale terminals, and extending credit to purchasers thereon, when certain thresholds are exceeded. The very inventive concept of the '353 Patent is touted by Defendant on its own website.  Improvements upon existing technology are patent eligible under § 101.

When the claims are properly construed, they cover specialized hardware and software designed to implement the claims of the '353 patent and satisfy the machine-or-transformation test.  Such specialized point-of-sale terminal technology, and methods involving same and extending credit at same when certain thresholds are exceeded, around the invention date (2012) were neither conventional, nor generic.

Defendant's reliance on the *Credit Acceptance* case is woefully misplaced because that case involves different patents with different claims and a different specification.  Even if the claims in *Credit Acceptance* were identical to the '353 Patent (which they are not), the differing

specifications means that in claim construction, the claims would necessarily be construed differently. Invalidity under § 101 is analyzed on a case-by-case basis examining the patent-in-suit and only the patent-in-suit (from the eyes of a PHOSITA). The Motion reads as if Defendant is trying to shoehorn the patent-in-suit into the *Credit Acceptance* patents. This Court should reject this now routine tactic amongst defendants of attempting to compare the claims of a patent-in-suit to a completely unrelated patent that has been invalidated for ineligible subject matter and affirmed by the Federal Circuit. Unless the specification and claims are identical, the comparison is not a proper § 101 analysis, and has never been the law in this regard.

Finally, Defendant Vyze, Inc. ("Defendant")'s § 101 defense is barred by 35 U.S.C. § 282(b), which is not a permitted litigation defense as § 101 is not "Specified in Part II as a Condition for Patentability." *Alice* does not mention § 282(b) and did not change this analysis. This Court should, thus, not "jump on the bandwagon" and ignore the statutory text and Congressional intent of § 282(b).

Plaintiff respectfully submits that the Court should deny the motion in its entirety. Alternatively, the Court should deny the motion as premature as having been filed prior to the issuance of a claim construction order.

## II.   AUTHORITY

### A.  Motions to Dismiss under Fed. R. Civ. P. 12

"[B]ecause a patent is presumed valid and requires clear and convincing evidence to prove its invalidity, a Rule 12(b) motion to dismiss is a procedurally awkward place for a court to resolve a patent's § 101 eligibility." *Slyce Acquisition v. Syte – Visual Conception*, No. W-29-cv-00257-ADA, 2020 U.S. Dist LEXIS 9451, at *14 (W.D. Tex. Jan. 10, 2020). To defeat a motion to dismiss under Rule 12(b)(6), a complaint merely needs to state "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A

court must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff" when deciding a motion under Rule 12(b)(6). *In re Katrina Canal Breaches Lit.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)) (emphasis added).

The court may only consider "the complaint, any documents attached to the complaint" and cannot consider extrinsic evidence. *Id.* "In other words, a motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Ramming v. US*, 281 F.3d 158, 162 (5th Cir. 2001) (quotations and citations omitted). "The moving party bears the burden of showing that plaintiff can prove no set of facts consistent with the allegations in the complaint which would entitle it to relief." *In re Chinese Manuf. Drywall Prods. Liab. Lit.*, 759 F. Supp. 2d 822, 828 (E.D. La. 2010) (quotations and citations omitted). "[T]o prevail on a Rule 12(b) motion to dismiss, the movant needs to overcome both a factual deck stacked against it and a heightened burden of proof." *Slyce Acquisition*, 2020 U.S. Dist LEXIS 9451, at *13. (emphasis in original).

Defendant's motion mischaracterizes a text order from this Court. Defendant states in the Motion, "[t]his case, however, 'is one of the rare cases where it is appropriate to resolve the Section 101 eligibility of the patent[]-in-suit as a Rule 12(b) motion to dismiss.' *See, e.g., Aeritas, LLC v. Sonic Corp.*, No. 6:20-cv-00103-ADA (Mar. 13, 2020) (text order denying Defendants' motions to dismiss without prejudice)." Motion at 1.

The Court's actual text order in the *Aeritas* case is as follows:

Text Order DISMISSING 7 Motion to Dismiss for Failure to State a Claim entered by Judge Alan D Albright. In light of the Court's order in *Slyce v. Syte*, No. 6:19-cv-257-ADA, 2020 WL 278481 (W.D. Tex. Jan. 10, 2020), the Court does not believe this is one of the rare cases where it is appropriate to resolve the Section 101 eligibility of the patents-in-suit as a Rule 12(b) motion to dismiss. It is therefore ORDERED that Defendants' motion is dismissed WITHOUT PREDJUDICE. Defendants may refile their motion after the opening of fact discovery. Should Defendants elect to refile their motion at that time, the Court orders Defendants to brief the patent ineligibility of each asserted claim, i.e., not just representative claims. The Court will grant any reasonable request to extend the page limits for such a motion.

To be clear, the Court takes no position on whether claim construction is necessary for any of the asserted claims. *See MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019). Furthermore, the Court takes no position on whether there are any factual disputes that preclude dismissal at the pleadings stage. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3 d 1121, 1128-30 (Fed. Cir. 2018).(This is a text-only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 03/14/2020)

*Aeritas, LLC v. Sonic Corp.*, No. 6:20-cv-00103-ADA (Mar. 13, 2020).

## B.     Patent Eligibility under 35 U.S.C. § 101

Section 101 of the Patent Act defines the four broad categories of patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101.   "In choosing such expansive terms . . . modified by the comprehensive word 'any,' Congress plainly contemplated that the patent laws would be given a wide scope." *Bilski v. Kappos*, 130 S. Ct. 1328, 1332 (2010) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980)); *Diamond v. Diehr*, 450 U.S. 175, 180 (1981) ("Congress intended statutory subject matter to 'include anything under the sun that is made by man.'" (quoting Congressional Committee Report)).   However, to avoid permitting an overly broad grant of rights that could "pre-empt use of [an] approach in all fields and [] effectively grant a monopoly over an abstract idea," "[l]aws of nature, natural phenomena, and abstract ideas" are non-patentable exceptions to § 101.   *Alice Corp. Pty. Ltd. v. CLS Bank  Int'l*, 573  U.S. ___ , 134  S. Ct. 2347, 2354

(2014).  The Supreme Court has acknowledged that the analysis is inherently flawed, because "[a]t some level, 'all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'"  *Id.* at 2354 (quoting *Mayo Collaborative Servs. v. Prometheus Labs.*, 132 S. Ct. 1289, 1293 (2012)).  Yet, they are not patent-ineligible "simply because [an invention] involves an abstract concept."  *Id.* at 2354 (quoting *Diehr*, 450 U.S. at 187).  Accordingly, the exception for abstract ideas is narrow, "lest it swallow all of patent law."  *Id.* at 2354.

A proper § 101 analysis is a fact-intensive process that requires a court to interpret the claims of a patent from the eyes of a PHOSITA.  The § 101 analysis requires the application of a two-step process to determine whether the claims at issue are a patent-ineligible concept, which in this case Defendant alleges is an "abstract" idea.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. __, 134 S. Ct. 2347, 2355 (2014).  The Supreme Court has not expressly defined an "abstract" idea.  *Id.* at 2357 ("[W]e need not labor to delimit the precise contours of the 'abstract ideas' category.").  But, the dictionary definition of abstract is: "[e]xisting in thought or as an idea but not having a physical or concrete existence."[1]  The first step in the analysis is to "determine whether the claims at issue are directed to one of those patent-ineligible concepts" (also referred to as judicial exceptions), *e.g.*, "a fundamental economic practice long prevalent in our system of commerce."  *Alice*, 134 S. Ct. at 2355-56.[2]  If the court finds that the patent is not directed to a judicial exception, i.e., the patented invention is not an abstract idea, then the analysis ends there, and the motion to dismiss under § 101 must be denied.

---

[1] *See also Bilski*, 130 S. Ct. at 609-10 ("[A] principle, in the abstract, is a fundamental truth; an original cause; a motivation." (citations, quotations, and alterations omitted)).

[2] *See also* 2014 Interim Guidance on Patent Subject Matter Eligibility, 37 C.F.R. §74622-24 (requiring patent examiners to identify the judicial exception as it is recited in the claims).

If, however, the court finds that the patented invention is directed to a patent ineligible concept, then the Court turns to the second step in the analysis and "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice Corp.*, 134 S. Ct. at 2357 (citing *Mayo Collaborative Serv. v. Prometheus Labs., Inc.*, 566 U.S. 10, 132 S. Ct. 1289, 1294, 1298 (2012)). Under the second step, even if an invention recites an abstract idea, the invention is patentable if it has additional features to ensure that the claim is more than drafted to monopolize, or preempt, the abstract idea. *Id.* When considering the inventive concept of claim limitations, the limitations are considered both individually and as an ordered combination. *Id.* at 2355. This approach requires that "claims 'must be considered <u>as a whole</u>.'" *Id.* at 2355, fn. 3 (quoting *Diehr*, 450 U.S. at 188) (emphasis added).

One useful and often dispositive test for analyzing patentability under § 101 is the "machine-or-transformation test." *Bilski*, 130 S. Ct. at 3227. A method is patentable under this test if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Id.* at 3226-27 (citing *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008)) (the method claims in *Bilski* were directed to the concept of hedging risk and failed the machine-or-transformation test).

### C. Presumption of Validity Applies to § 101 and Patent Ineligibility Must Be Proven by Clear and Convincing Evidence

A patent and its claims enjoy a presumption of validity that can only be overcome by clear and convincing evidence. 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd P'ship*, 131 S. Ct. 2238, 2242 (2011) (holding that the clear and convincing standard applies even when the ultimate question is one of law). This presumption of validity applies to the § 101 analysis. *E.g.*, *Freeny v. Murphy Oil Corp.*, No. 2:13-CV-791-RSP, Dkt. No. 143, at 4 (E.D.

Tex. May 22, 2015) (denying motion for summary judgment based on § 101 because defendant failed to clearly and convincingly show the patent was ineligible).[3]

## III.   ARGUMENT

### A.  Claim 1 is not directed to the abstract idea of extending financing to customer

Defendant contends that "Claim 1 is directed to the abstract idea of making lending decisions based on creditworthiness and risk factors." Motion at 8.   This is a gross mischaracterization of Claim 1. First, Claim 1 is drawn to a method for when various thresholds for creditworthiness and risk factors are "exceeded."  In other words, unlike the art compared by Defendant to the '353 Patent, the claims are drawn to making lending decisions at a point-of-sale when a potential customer would not qualify for lending.  See '353 Patent at 5:8-14 ("In an embodiment, a financing request from an individual that exceeds an established lending limit would be "Rejected" rather than "Declined" and so signified in a response from the host 102 to the POS terminal or computer from which the request was initiated."); 6:25-38 ("In still another embodiment, the host 102 may further determine whether the credit worthiness of the purchaser-borrower exceeds a financing request limit (or threshold) for that purchaser-borrow and whether the requested sale exceeds limits imposed at a particular merchant's location. As described above, a threshold limit may be established on an individual purchaser-borrower basis to reflect the current credit-worthiness of that purchaser-borrower. Thus, a known purchaser (that is, a

---

[3] *See also, e.g., CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1304-05 (Fed. Cir. 2013) *aff'd Alice*, 134 S. Ct. 2347 (2014); *Card Verification Solutions, Inc. v. Citigroup*, No. 13-C-6339, 2014 U.S. Dist. LEXIS 137577, at *6 (N.D. Ill. Sept. 29, 2014) (It is "rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary."  Dismissal is appropriate "solely when the *only plausible reading* of the patent is that there is clear and convincing evidence of ineligibility.").

purchaser-borrowers with a record in the purchaser-borrower datastore 108), may have threshold limits that differ from limits imposed on an unknown purchaser borrower, and the known purchaser borrower's threshold may vary over time depending on the payment history of the purchaser borrower.").   In the embodiment covered by the claims, the credit transaction is approved despite two different thresholds being exceeded, one for "creditworthiness" and another for a "risk factor." In accordance with claim 1, and unlike the prior art, the transaction is still authorized by a lending institution.  *See* '353 Patent at 7:55-59 ("In this embodiment, the host 102 authorizes payment of the merchant in full for the goods or services elected for purchase by the purchaser-borrower when the purchaser-borrower when both the first and second thresholds are exceeded.").

As set forth in the specification, this is a major improvement in the prior art, since previously "[o]ne option that is not available at the POS is the creation of a financing instrument that establishes a purchaser's obligation to pay for goods and/or services in installments while providing a merchant payment in full. Typically, such financing instruments, if available at all, are separately negotiated. While a purchaser may authorize a merchant to draw money from a purchaser's account or charge a purchaser's credit card on a recurring basis, the merchant is not paid in full until the payment cycle is completed. Separately negotiated installment instruments may also result in the merchant receiving less than full payment for the goods and services provided." 1:38-49. The '353 Patent then solves this specific problem with a specific machine, not a mere abstract solution. Indeed, it is a solution that Vyze itself touts heavily over the prior art.  As explained on the Vyze website:

How it works
Jack is ready to checkout online. He sees an attractive credit offer and decides to apply by filling out just a few quick personal details.

Jack's application is automatically sent to the first lender in the retailer's selected group of lenders, the application will flow through the waterfall of lenders to identify a suitable offer for Jack.
In seconds, the matching credit offer is presented to Jack for his review.
Jack reviews and accepts the offer and can now use his new purchasing power to complete his purchase.
Jack returns the following week, to make another purchase with the account he opened last week.

https://vyze.com/consumer-financing/online-financing/, last accessed on May 26, 2020.

Thus, Vyze itself touts the superior properties of the invention as well as the distinction of the claims of the '353 Patent from the prior art, explaining that the application will flow through a "waterfall" of lenders, meaning that they will offer credit to Jack even though he has exceeded various credit and risk thresholds for other lenders. This is far superior to prior art methods where Jack would see "declined" if he exceeded either threshold of any lender. Moreover, Jack might have to fill out multiple forms in order to receive credit, instead of using a method that approved his credit despite failing multiple thresholds. Claim 1, and in fact all of the claims, describe an improvement to how point-of-sale terminals operate and can be used by merchants.

Instead of aptly characterizing the claims, Defendant appears to focus their argument on the use of the term "velocity data." As an initial matter, the term "velocity data" needs a proper claim construction before fully making a § 101 analysis. Nevertheless, Defendant claims that the patent-in-suit imposes no limitations on what "velocity data" may be other than the traditional factors evaluated by financial institutions to evaluate credit risk, and cites to one passage, 5:15-18, in the specification, to support Defendant's argument. Defendant completely ignores the separately claimed exceeded threshold for the "risk factor" as mentioned above.

Defendant also mischaracterizes a phrase of Claim 1. This particular phrase reads, "determining by the processor from the velocity data whether a risk factor exceeds a second

14

threshold." Before a § 101 analysis can be properly done on this phrase, "determining", "processor", "risk factor," "exceeds" and "second threshold" need a proper claim construction. Nevertheless, the specification clearly provides support for not only what "velocity data" is, but also how this particular step is performed in the invention. 6:16-24 ("…the host processor 120 of host 102 dynamically establishes velocity thresholds for each purchaser-borrower. For example, the host 102 may be configured with an initial frequency threshold and an initial aggregate outstanding borrowing threshold. As a purchaser-borrow[er] acquires a history with the host 102, the processor 120 may dynamically adjust a current frequency threshold and balance threshold to reflect the purchaser-borrow[er] current credit-worthiness at a point in time as measured by the host 102."). Defendant's rudimentary analysis conveniently ignores this and other support concerning this element.

### B. Defendant's Motion Must Be Denied Because Claim Construction is Necessary and Fact Issues Exist, Which Cannot Be Resolved Under Rule 12

Defendant makes several assertions that § 101 determinations do not need claim construction. *See* Motion at 19-20. Defendant, however, fails to articulate why claim construction is not needed with respect to the patent-in-suit. "[B]ecause claim construction can affect—and perhaps, in most cases, will affect—a court's §101 eligibility analysis, the Court believes that it is generally wiser—and more efficient—to wait to determine a patent's § 101 eligibility until after issuing its claim construction order." *Slyce Acquisition,* 2020 U.S. Dist LEXIS 9451, at *16. Indeed, Defendant completely mischaracterizes the claims in part because it failed to engage in any meaningful claims construction. This is not surprising, since Defendant filed their motion a mere twenty-one days from service of the complaint.

As noted above, Defendant claims that Claim 1 is merely directed to the idea of making lending decisions based on creditworthiness and risk factors. *See* Motion at 1. Defendant is

guilty here of only considering the claim terms in a vacuum.  A proper claim construction and even a basic analysis of the Claim would show that "registering by a processor," "receiving by the processor," "sending by the processor," "determining by the processor" and "authorizing by the processor" are *all* steps done by a computer processor as part of the point-of sale terminal technology.  Thus, the claim satisfies the machine-or-transformation test.  This is clearly supported by the specification, *see, e.g.,* 2:32-3:23; 3:24-31; 3:32-40; 3:41-53; 3:61-4:3; 4:16-34; 4:62-6:51; 6:59-7:50, which Defendant conveniently omits in order to support its argument. *See* Motion at 15.

Thus, when Defendant states that the claims "merely recite generic components," Motion at 17, Defendant does so in a manner that completely disregards how the claims would be construed in light of the intrinsic evidence.  A patent's claims must be read in view of the specification, of which they are a part.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967,979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996) (emphasis added).  For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims.  *See id.*

Accordingly, because claim construction is needed to properly demonstrate the scope of the claims, the Court should respectfully deny Defendant's motion as premature.

### C.    As Defendant Fails to Consider Any Claim from the Perspective of a Person Having Ordinary Skill in the Art, the Motion is Deficient on Its Face

Claims must be considered from the viewpoint of a person having ordinary skill in the art ("PHOSITA").  This fundamental standard is not mentioned at all by Defendant in their motion.  Having failed to address this fundamental issue in its motion, Defendant should be estopped from raising it in the first time on reply.  Moreover, the Court should respectfully deny Defendant's motion for having failed to address this key standard.

Even putting aside, *arguendo*, Defendant's lack of argument considering PHOSITA, "insufficient discovery is another factor that can effect a court's analysis because 'whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination . . . [t]hus, like claim construction, fact discovery can also affect a § 101 analysis." *Slyce Acquisition,* 2020 U.S. Dist LEXIS 9451, at *16.

### D.    Defendant Fails to Clearly and Convincingly Demonstrate That Any of the Claims are Invalid under § 101

Defendant's characterization of the patent-in-suit leaves out the crux of the invention that is found even in the abstract—that is, the "system and method for extending credit to a purchaser **at a point-of-sale terminal.**"   Because Defendant's characterization of the claims "does not tie adequately the claim language to the purported abstract concept," Defendant has failed to meet its burden to show that any claim is directed to an abstract idea. *See PNC Bank v. Secure Axcess, LLC*, Case No. CBM2014-00100, 2014 WL 4537440, at *12 (P.T.A.B. Sept. 9, 2014); *U.S. Bancorp* v. *Solutran, Inc.*, Case No. CBM2014-00076, 2014 WL 3943913, at *8 (P.T.A.B. Aug. 7, 2014).

Moreover, even if the claims were directed to the purported abstract idea—which they clearly are not—Defendant provides no evidence that the purported abstract idea is a "fundamental truth[] or fundamental principle[] patenting of which would pre-empt the use of basic tools of scientific and technological work."   *Alice*, 134 S. Ct. at 2355.[4]   Nor has Defendant set forth any evidence that the purported abstract idea is "a fundamental economic

---

[4] *See also Helios Software, LLC v. Spectorsoft Corp.*, No. 12-cv-081-LPS, 2014 U.S. Dist. LEXIS 135379, at *53-*54 (D. Del. Sept. 18, 2014) ("Although [the claims may be drawn to] principles fundamental to the ubiquitous use of the Internet or computers generally, [defendant] has provided no support for that position.  As such, the Court cannot agree with [defendant] that the patents-in-suit are drawn to an abstract idea.").

practice long prevalent in our system of commerce." *Bilski*, 561 U.S. at 611.  Unlike in *Alice,* where the Court referred to books and journal articles discussing the use of a third-party intermediary to reduce settlement risk, or in *Bilski*, where the Court relied on multiple textbooks discussing the fundamental economic concept of hedging risk, Defendant here points to no equivalent clear and convincing evidence.  *See Alice,* 134 S. Ct. at 2356*; Bilski,* 561 U.S. at 611. In fact, as noted above, there is absolutely no evidence that the prior art taught extending credit when the purchaser-borrower exceeds not one, but multiple thresholds.

The only evidence cited by Defendant—the patent-in-suit itself—shows that the claims are drawn not to an abstract idea, and rather are specific improvements to existing technology in the field of point-of-sale terminals, namely a system and method for extending credit to a purchaser at said terminal.  Improvements upon existing technology are patent eligible under § 101.  *Alice*, 134 S. Ct. at 2358.

As to the "inventive concept," the entire patent—from the abstract, to the specification, to the claims (as they would be construed in view of the intrinsic evidence)—is drawn to the steps for extending credit to a purchaser at a point-of-sale terminal when various thresholds for creditworthiness and risk factors are "exceeded."  Prior to the date of invention, point-of-sale terminals were "dumb" terminals that could only process sales transactions. The invention of the patent-in-suit describes a system and method by which a purchaser can obtain credit for a purchase, in real time, at a point-of-sale terminal, when various thresholds are exceeded.  The invention, as explicitly described in the specification and claims, is obviously an improvement on point-of-sale terminal technology, and is, thus, not merely an "abstract idea."

Notably, Defendant's Motion contains no analysis whatsoever of the term "exceeded" as it used in the context of the claims, and how it has an impact on what the invention actually is.

Defendant should be estopped from raising argument concerning the "exceeded" term for the first time in its reply.

     i.  <u>Dependent Claims</u>

Defendant's arguments regarding the dependent claims fail for the same reasons that its arguments fail as to independent claim 1.  Claim 2 adds the requirement "where the velocity data are selected from the group consisting of a frequency of requests from the purchaser-borrower, a count of rejected requests, a count of approved requests, and a cumulative total of combined borrowings by the purchaser-borrower."   Again, the term "velocity data" requires claim construction.

Claim 3-6 add limitations concerning the "financial information" term of Claim 1.  As Claim 1 is not directed to an abstract idea, these claims are, necessarily, not directed to an abstract idea as well.

Claim 7 adds a limitation to Claim 1, "further comprising pre-authorizing payment of sums due under the installment purchase agreement from an account of the purchaser-borrower when the purchaser-borrower is credit worthy as determined from the financial information." This limitation simply adds to the already non-abstract Claim 1, a further limitation that can be implemented in the point-of-sale terminal, hence it is another feature of the invention.

Claim 9 adds a limitation where the merchant can be a physical store or a web based merchant. Claim 10 adds a limitation that the term "services" from Claim 1 can include medical services. Claim 11 adds a limitation concerning a request for an installment purchase agreement being received prior to the purchase. Claim 12, which depends on Claim 11, adds a limitation to the point-of-sale terminal, wherein it can be a terminal or a computer located at a kiosk and a computer operated by the purchaser-borrower. Claim 13 adds further limitations of receiving a

payment history of the purchaser-borrower and establishing by the processor the first threshold using the payment history.

When the claims are properly construed, no claim of the patent-in-suit covers purely general business methods, but instead covers specialized hardware and software designed to implement the claims of the patent-in-suit and satisfy the machine-or-transformation test.  Such specialized point-of-sale terminals around the invention date (2012) was neither conventional, nor generic.  Specialized software is commercially available today that implements the claims of the patent-in-suit, and the existence of such tangible products evidences that the patent-in-suit is not directed to an abstract idea.  Retailers do not invest in merely "abstract" technologies that fail to provide any tangible, concrete benefits or fail to improve their existing sale channels.

Because Defendant has failed to set forth any evidence, let alone clear and convincing evidence, that any claim—when properly considered in light of the intrinsic evidence—is drawn to an abstract idea, the §101 inquiry ends here, and the motion to dismiss should be denied.

### E.      Defendant's reliance on Credit Acceptance is misplaced

Defendant relies primarily on *Credit Acceptance Corp. v. Westlake Services*, 859 F.3d 1044 (Fed. Cir. 2017) for the proposition that, the patent-in-suit, like, allegedly, the patent in *Credit Acceptance*, "claims no more than performing ordinary steps in the financing process like 'obtaining financial information about a customer from a user, combining these two sources of information to create a financing package for each of the inventories items, and presenting the financing packages to the user.'"  *See* Motion at 2.

However, this is because Defendant completely and conveniently ignores the claim limitations that distinguish the patent-in-suit from the patent involved in *Credit Acceptance*.  The

patent in *Credit Acceptance* contained <u>none</u> of the limitations found in the last three steps of Claim 1:

"determining by the processor from the financial information received from the purchaser-borrower whether the credit worthiness of the purchaser-borrower exceeds a first threshold;

determining by the processor from the velocity data whether a risk factor exceeds a second threshold; and

authorizing by the processor payment of the registered merchant in full by the lending financial institution for the goods or services elected for purchase by the purchaser-borrower when both the first and second thresholds are exceeded."

There is no claims construction given by Defendant for "whether the credit worthiness of the purchaser-borrrower exceeds a first threshold"; "determining by the processor from the velocity data whether a risk factor exceeds a second threshold" much less "authorizing by the processor payment … when both the first and second thresholds are exceeded."  None of these limitations were contained in the patent claims at issue in *Credit Acceptance*, and even if they were, they would have to be interpreted in light of a completely different specification and prosecution history.

Moreover, there is absolutely no evidence that any of the above claim limitations would have been considered "well-understood, routine, and conventional to a skilled artisan at the time of the patent" because none of these claim limitations were considered in *Credit Acceptance*. Instead, Defendant simply seeks to strip out all of the relevant and different claim limitations of the patent-in-suit in order to try to shoehorn the present case into the much broader and far more generic claims at issue in *Credit Acceptance*, without so much as even bothering to try to explain

the majority of the claim terms. Far from clear and convincing evidence, Defendant has cited no evidence at all. Indeed, in *Credit Acceptance*, the patent owner failed to even recite an inventive concept. 859 F.3d at 1056. Here, not only does the patent owner tout an inventive concept ignored by counsel for the Defendant, but the Defendant touts that same inventive concept on its own website.

Further, nowhere in federal statute or case law on invalidity under § 101 has it been expressed that comparing the claims of the patent to an unrelated patent with a different specification is a factor in a § 101 analysis. Invalidity under § 101 is analyzed on a case-by-case basis examining the patent-in-suit and only the patent-in-suit (from the eyes of a PHOSITA). Thus, Defendant's reliance on *Credit Acceptance* and similar cases is not only misplaced, but indicative of the lack of merit in its Motion.

**F.    Defendant's § 101 Defense is Barred by § 282(b), Which Is Not a Permitted Litigation Defense as § 101 is not "Specified in Part II as a Condition for Patentability"**

Pursuant to 35 U.S.C. § 282, a patent is presumed valid and invalidity defenses in litigation are expressly limited to those "specified in part II as a condition for patentability," among others.  35 U.S.C. § 282.  Section § 101 is not specified as "a condition for patentability" or any other permitted defense.  35 U.S.C. Part II, §§ 100-212 (only listing §§ 102 and 103 as "Conditions for patentability"); *see also Diehr*, 450 U.S. at 182 and at 189-191  (thoroughly analyzing the legislative history of § 101 and stating that "Congress <u>intended statutory subject matter to 'include anything under the sun that is made by man</u>'" and that "Section 101, however, is <u>a general statement</u> of the type of subject matter that is eligible for patent protection '<u>subject to the conditions and requirements of this title</u>.'   <u>Specific conditions for patentability</u>

follow and § 102 covers in detail the conditions relating to novelty." (emphasis added, citations omitted)).[5]

Commentators have also thoroughly analyzed this issue, including, *inter alia*, the statutory text, recent case law, and legislative history.  *See, e.g.*, Hricik, D., Are the Courts Correct in Their Assumption that a Patent Issued on Non-patentable Subject Matter is Invalid?,  located  at  http://patentlyo.com/patent/2012/08/are-the-courts-correct-in-their-assumption-that-a-patent-issued-on-non-patentable-subject-matter-is-invalid.html  (Aug.  27, 2012).  That analysis supports the conclusion that the recent trend allowing § 101 challenges in litigation is contrary to the plain text of § 282(b), Congress' intent to eliminate § 101 defense in litigation, and Supreme Court precedent requiring adherence to enacted statutory text.

*Alice* does not mention § 282(b) and did not change this analysis.  This Court should not "jump on the bandwagon" and ignore the statutory text and Congressional intent of § 282(b).

## VI.    CONCLUSION

Defendant's motion not only fails to show, by clear and convincing evidence, that the patent is invalid under § 101, but fails to provide any discussion or analysis of the relevant standard for analyzing claims, i.e., analyzing claims from the viewpoint of a PHOSITA.  Thus, the motion should respectfully be denied in its entirety.  Alternatively, Defendant's motion is premature because claim construction for this patent would be particularly helpful before making any § 101 determination, and should, at the very least, be denied without prejudice to re-file following claim construction.

---

[5] *Graham v. John Deere Co.*, 383 U.S. 1, 12-13 (1966) (stating that the Patent Act of 1952 sets out "three explicit conditions" for patentability, none of which are patent eligibility).

"[B]ecause an issued patent enjoys the presumption of validity which requires clear and convincing evidence to prove otherwise, because claim construction and fact discovery completely change the Court's § 101 analysis, and because the Court gains a great understanding of the patents and the technology by delaying the resolution of eligibility, the Court believes that delaying the determination of a patents § 101 eligibility is the wisest course of action." *Slyce Acquisition,* 2020 U.S. Dist LEXIS 9451, at **21-22.

Respectfully Submitted,

**ECREDIT SOLUTIONS LLC**

*/s/ Papool S. Chaudhari*

Dated:  May 28, 2020                    By: **_____**

Papool S. Chaudhari
Texas State Bar No. 24076978
Chaudhari Law, PLLC
P.O. Box 1863
Wylie, Texas 75098
Phone: (214) 702-1150
Fax: (214) 705-3775
Papool@ChaudhariLaw.com

**ATTORNEY FOR PLAINTIFF
ECREDIT SOLUTIONS LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule.  As such, the foregoing was served on all counsel of record who have consented to electronic service. Pursuant to Fed. R. Civ. P. 5(d) and Local Rule, all others not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing via e-mail this 28th day of May, 2020.

*/s/ Papool S. Chaudhari*

**_____**

Papool S. Chaudhari