**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **ECREDIT SOLUTIONS LLC,** | |
| **Plaintiff,** | **CASE NO. 6:20-cv-00304-ADA** |
| **v.** | **JURY TRIAL DEMANDED** |
| **VYZE, INC.,** | |
| **Defendant.** | |

**DEFENDANT VYZE, INC.'S REPLY**
**IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO**
**<u>DISMISS FOR FAILURE TO STATE A CLAIM</u>**

Vyze's motion is not a typical § 101 motion. This case does not involve the kind of run-of-the-mill software patents involving databases, encryption, or pattern recognition that, while commonly held invalid as abstract, at times raise close issues at the pleadings stage. The '353 Patent is not such a patent—it is directed to the same kind of fundamental economic practices held patent ineligible in the foundational cases that have recently shaped the § 101 inquiry. Every similar patent evaluated by the Federal Circuit since *Alice* has been held invalid, including patents considered as recently as April 2020. Indeed, eCredit does not point to a single decision upholding claims similar to the '353 Patent, nor does eCredit make any attempt to distinguish the '353 Patent from the litany of cases—*Alice*, *Bilski*, *Accenture*, *Credit Acceptance*, just to name a few—finding such patents invalid. Moreover, none of the claims of the '353 Patent provide any meaningful limitations that would constitute an inventive concept. Rather than address disclosures in the '353 Patent admitting that the claims capture nothing more than generic components performing their basic functions, eCredit instead unsuccessfully attempts to manufacture artificial fact issues.

Vyze therefore seeks an early resolution to this case while respectfully acknowledging the Court's general approach to resolve such motions after claim construction. *See, e.g.*, *Aeritas, LLC v. Sonic Corp.*, No. 6:20-cv-00103-ADA (Mar. 13, 2020).[1] The Court need look no further than the patent itself to reach a finding of patent ineligibility. eCredit has failed to identify any fact issue or proposed claim construction that could possibly alter this result. In cases involving patents directed to fundamental economic practices like the '353 Patent, neither the Court nor the parties need waste resources to conclude that such patents are not eligible for patent protection. Vyze thus respectfully requests that the Court grant its motion to dismiss with prejudice.

---

[1] Vyze disputes eCredit's statement that Vyze's "motion mischaracterizes a text order [in *Aeritas*] from this Court." (Resp. at 8.) eCredit does not explain any mischaracterization, and given that Vyze quoted directly from the Court's order, there was no opportunity for mischaracterization. (Mot. at 1.)

I.      **ARGUMENT**

      A.      **eCredit's reliance on conclusory language does not save its claims from a finding of ineligibility.**

As shown in Vyze's Motion to Dismiss, the claims of the '353 Patent are directed to the abstract idea of making lending decisions based on creditworthiness and risk factors. eCredit admits "the entire patent . . . is drawn to the steps for extending credit to a purchaser at a point-of-sale terminal when various thresholds for creditworthiness and risk factors are 'exceeded.'" (Resp. at 18.) This is not a technological advance—it is a fundamental economic practice. *See Island Intellectual Prop., LLC v. Stonecastle Asset Mgmt. LLC*, No. 19-CV-4792 (JPO), 2020 WL 2793000, at *3 (S.D.N.Y. May 29, 2020) (finding claims directed to using multibank depository program to stay within insurance limits were directed to fundamental economic practice and thus abstract). Moreover, as Claim 1 only contains basic, generic devices and functions, the claims contain no inventive concept. Nothing that eCredit argued in its response dictates otherwise.

      1.      ***The '353 Patent is directed to the abstract idea of making lending decisions based on creditworthiness and risk factors.***

As Vyze's motion lays out, the claims of the '353 Patent recite nothing more than the same fundamental economic practices found abstract in *Alice*, *Bilski*, and their progeny. eCredit contends that comparing the '353 Patent to other patents invalidated by the Federal Circuit as fundamental economic practices is inappropriate because "[n]one of [Claim 1's] limitations were contained in the patent claims at issue" in those cases. (Resp. at 21; *see also id.* at 22 ("[N]owhere in federal statute or case law on invalidity under § 101 has it been expressed that comparing the claims of the patent to an unrelated patent with a different specification is a factor in a § 101 analysis.").) On the contrary, making these kinds of comparisons between different patents is not only explicitly endorsed by the Federal Circuit, but a practice the Federal Circuit and district courts engage in regularly. *See, e.g.*, *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294–

95 (Fed. Cir. 2016) ("[T]he decisional mechanism courts now apply [under § 101] is to examine earlier cases in which a similar or parallel descriptive nature can be seen—what prior cases were about, and which way they were decided."). In short, it is immaterial that a court has never considered the exact claims of the '353 Patent—courts, including the Federal Circuit, have considered similar claims directed to nearly identical concepts and held them invalid as abstract.

eCredit's response makes no meaningful attempt to explain why the focus of the '353 Patent is any different from those invalidated patents. Instead, the response admits that "the entire patent" is nothing more than "steps for extending credit to a purchaser at a point-of-sale terminal when various thresholds for creditworthiness and risk factors are 'exceeded'"—an abstract idea. (Resp. at 18.) How is that any different than "processing an application for financing a purchase"? *See Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044 (Fed. Cir. 2017); *see also Bozeman Fin. LLC v. Fed. Reserve Bank of Atlanta*, 955 F.3d 971, 978 (Fed. Cir. 2020) (holding abstract "a method of receiving data from two financial records, storing that data, comparing that data, and displaying the results"). The Court needs nothing more than the patent itself to conclude that no material difference exists between the claims asserted here and those held ineligible in *Credit Acceptance* and *Bozeman. See, e.g.*, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) (relying on the four-corners of the patent to conclude that the claim "[did] not recite an inventive concept sufficient to transform the abstract idea into a patent eligible application").

Rather than address the striking similarities between the '353 Patent and the case law discussed in Vyze's motion, eCredit complains that Vyze "has not shown that the claims are invalid under § 101 by clear and convincing evidence." (Resp. at 6.) eCredit misapprehends the clear and convincing evidence standard, which applies to issues of fact. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019). As discussed below, eCredit fails to raise

any relevant issues of fact that preclude the Court from finding the '353 Patent ineligible under § 101 as a matter of law.

### 2. *The claims of the '353 Patent apply the abstract idea without any inventive concept.*

eCredit describes the purported advance of the '353 Patent as "an improvement to how point-of-sale terminals operate and can be used by merchants." (*See* Resp. at 5, 16.) But the patent makes no such claim, and its claims contain no such "improvement." *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019) (noting that "any allegation about inventiveness, wholly divorced from the claims or the specification, [cannot] defeat[] a motion to dismiss"). Rather, the specification admits that it merely uses known hardware like POS terminals and processors to implement their conventional functions like sending, receiving, and processing data. (*See* Mot. at 15–17.) Even if the specification did recite improvements to the hardware discussed therein, no such improvements are recited in the claims. The '353 Patent therefore cannot be rescued by the purported (but unidentified) improvements to the recited hardware. *See Berkheimer*, 881 F.3d at 1370 ("Because claims 1–3 and 9 do not capture the purportedly inventive concepts, we hold that claims 1–3 and 9 are ineligible."); *see also Cellspin*, 927 F.3d at 1317 (noting that claims can survive "[a]s long as what makes the claims inventive is recited by the claims").

eCredit next contends that making lending decisions at a POS terminal "is a major improvement in the prior art." (Resp. at 13.) So what? In *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018), the Federal Circuit rejected an almost identical argument regarding database systems. *BSG Tech*, 899 F.3d at 1286 ("We have consistently held, however, that claims are not saved from abstraction merely because they recite components more specific than a generic computer."). Just as "performing an abstract idea in conjunction with a well-known database structure" is insufficient to confer patent eligibility, *id.* at 1287, so too is performing the abstract

4

idea of making lending decisions based on creditworthiness and risk factors on well-known POS

terminals. *See also Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*, 123 F. Supp. 3d 557, 563

(D. Del. 2015), *aff'd*, 643 F. App'x 1014 (Fed. Cir. 2016) (finding invalid "claims [to] the use of

a POS to transmit transaction-related information and to process payments").

eCredit also relies on a pre-*Alice* approach to argue the claims satisfy the machine-or-

transformation test and therefore include the necessary inventive concept to pass the *Alice* test.

(*See* Resp. at 20.) Yet several of the limitations that eCredit relies on—"specialized hardware and

software"—are not actually in the '353 Patent's claims. (*See id.*) Even so, eCredit neither offers

an explanation for this conclusion nor explains how the claims contain an inventive step that would

"transform" the abstract idea of making a lending decision into a patent eligible concept. Simply

put, eCredit points to an old, inapplicable test and makes no attempt to discuss or even cite any

case law to support its application here.[2] Moreover, even if eCredit's contentions were true, no

"technology" is responsible for transforming anything in the '353 Patent's claims. eCredit is just

touting the result of an allegedly new business arrangement. The Federal Circuit has held that

"manipulations of 'public or private legal obligations or relationships, business risks, or other such

abstractions cannot meet the [machine-or-transformation] test because they are not physical

objects or substances, and they are not representative of physical objects or substances.'"

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014).

       **3.**      ***No factual dispute exists to preclude a determination of patent-***

---

[2] Likewise, eCredit faults Vyze for not offering the "highly relevant" perspective of a person having ordinary skill in the art with respect to the '353 Patent. (*See, e.g.*, Resp. at 6.) eCredit does not explain how a such a discussion would have any impact on the § 101 analysis, nor could it. The perspective of a skilled artisan is relevant to factual disputes at step two but, as discussed below, no such factual disputes exist. *See, e.g.*, *IPA Techs., Inc. v. Amazon.com, Inc.*, 352 F. Supp. 3d 335, 343, 348–49 (D. Del. 2019) (Andrews, J.) (citing *Berkheimer*, 881 F.3d at 1369) ("I am not required to treat boilerplate allegations that the claims are directed to new computer functionality and improvements to technological processes as true where those allegations contradict the language of the claims and specification . . . . Moreover, these boilerplate allegations do not change the fact that the specification is replete with references to implementing the claims using conventional technology.").

*ineligibility.*

eCredit attempts to manufacture a factual question by its conclusory assertion that "fact issues exist." (Resp. at 15.) eCredit does not explain what those unresolved factual issues are, and therefore, nothing precludes dismissal on the pleadings. *See, e.g.*, *Jedi Techs., Inc. v. Spark Networks, Inc.*, No. CV 1:16-1055-GMS, 2017 WL 3315279, at *6 (D. Del. Aug. 3, 2017) (ruling on § 101 at Rule 12(b)(6) stage because plaintiff failed to specifically identify factual or claim construction disputes). Nor is the appropriate inquiry, as eCredit suggests, whether the claimed abstract idea is described by Vyze's promotional material. (*See* Resp. at 13–14.) Instead, the question is whether the financing transaction itself is claimed in a manner sufficient to convert a patent-ineligible abstract idea to eligible subject matter. *See Berkheimer*, 881 F.3d at 1370 (holding that the claimed conventional limitations "fail to transform th[e] abstract idea into a patent-eligible invention").

The Court need only look to the language of the '353 Patent to determine that the claimed financing transaction merely recites a fundamental economic practice. (*See* Mot. at 10–13.) Unlike eCredit's statement, the '353 Patent does not disclose a new approach to financing "when a potential customer would not qualify for lending." (Reply at 12.) No such disclosure exists. Rather, the specification quoted by eCredit merely states that a lending application is not "Declined" when an individual would otherwise qualify for financing, but the financing request exceeds "lending limits provided by the subscribing merchant or established by the lending financial institution." ('353 Pat. at 5:6–14; *see also id.* at 5:55–62 (explaining that such lending limits "(i.e. electing to restrict purchaser-borrower requests to a maximum $2,000 versus, for example, $5,000)" may be set "in order to lower processing and service fees"); *id.* at 6:25–38.) The application "would be 'Rejected' rather than 'Declined'" in this instance. (*Id.* at 5:9–14.) Regardless, the specification is agnostic as to the relationship between the claimed thresholds (*i.e.*, creditworthiness of the

purchaser-borrower and the velocity data) and the ultimate lending decision. The financing application may be approved regardless of whether such thresholds are exceeded, (*see* Reply 12–13; '353 Pat. at 7:55–59), or not, ('353 Pat. at 6:44–47 ("[T]he host 102 may authorize payment of the merchant when a purchaser-borrower's 'measured' creditworthiness and measured velocity are both ***below*** their respective thresholds.") (emphasis added)). The '353 Patent thus discloses nothing more than making lending decisions based on creditworthiness and risk factors, regardless of what those factors are or how they relate to any thresholds set by the system. eCredit's attempt to paint the role of the factors or the thresholds in the ultimate lending decision as the inventive concept is not only "wholly divorced from the claims [and] the specification," *Cellspin*, 927 F.3d at 1317, it is flatly contradicted by the specification.

Even if the claimed financing methods were novel concepts (they are not), they do not confer patent eligibility, as "a claim for a new abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016); *see SAP Am, Inc. v. Investpic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) ("We may assume that the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility.") (internal citations omitted). Because eCredit cannot point to a relevant and unresolved fact issue, the Court should dismiss the claims without further proceedings.

### 4. *eCredit admits the dependent claims add nothing to Claim 1.*

eCredit's discussion of the dependent claims merely restates them without addressing how they shelter the claims from ineligibility. (Resp. 19–20.) They do not. *See Bilski*, 561 U.S. at 610–11 ("[T]he prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity.'"). The Federal Circuit has, for example, held claims invalid that are nearly identical to Claims 3 and 4 of the '353 Patent because "[v]erifying financial documents to reduce

7

transactional fraud is a fundamental business practice that, without more, is not eligible for patent protection." *Bozeman*, 955 F.3d at 978. eCredit does not dispute Vyze's arguments with respect to the dependent claims but rather asserts that because "Claim 1 is not directed to an abstract idea, these claims are, necessarily, not directed to an abstract idea as well." (Resp. at 19.) In other words, eCredit admits that the dependent claims rise or fall with Claim 1. Claim 1 is invalid as abstract—nothing in the dependent claims changes that conclusion.

**B.    Claim construction is unnecessary for the Court to determine that the claims at issue are subject matter ineligible.**

Where patent claims involve terms that are "straightforward and not technical in nature," such as the present case, the claims need not be construed before deciding patent eligibility under § 101. *See Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 751–52 (D. Del. 2018) (Bryson, J., sitting by designation) ("District courts have frequently decided section 101 issues on motions to dismiss, and the Federal Circuit has approved of that procedure on numerous occasions, including in cases post-dating the decisions in *Aatrix* and *Berkheimer*."); *see also Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 Fed. App'x 988, 991–93 & n.1 (Fed. Cir. 2014) (holding a patent claim ineligible under § 101 where the district court did not engage in claim construction, but where the plaintiff "d[id] not explain which terms require construction or how the analysis would change").

Even if the Court finds the meanings of certain terms helpful in deciding the § 101 issue, the claims of the '353 Patent are nevertheless ineligible under any reasonable construction of the terms identified by eCredit as requiring construction. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (upholding the district court's grant of a 12(b)(6) motion on § 101 grounds because "even when construed in a manner most favorable to [the plaintiff], none of [the plaintiff's] claims amount to 'significantly more' than the

abstract idea").

For example, eCredit asserts claim construction is necessary to show that the computer processor at the POS terminal performs "registering," "receiving," "sending," "determining," and "authorizing" steps. (Resp. at 5.) There are all conventional steps performed by generic computers. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) ("[T]he claims recite both a generic computer element—a processor—and a series of generic computer 'components' that merely restate their individual functions—i.e., organizing, mapping, identifying, defining, detecting, and modifying."). Under any construction, therefore, the recited hardware components are nothing more than generic devices (*i.e.*, a processor) used in conventional ways (*i.e.*, receiving and sending data). *See id.* ("[The claims] merely describe the functions of the abstract idea itself, without particularity. This is simply not enough under step two.").

eCredit also contends that the term "velocity data" requires claim construction. (Resp. at 14.) Not only does eCredit fail to explain how construction would impact the invalidity analysis, eCredit does not contest that "velocity data" can be any of the "traditional factors evaluated by financing institutions to evaluate credit risk." (Mot. at 11.) Nor does eCredit propose how any construction of the claimed "risk factor" distinguishes the lending evaluation of the '353 Patent from any other lending practice. eCredit fails to offer a concrete explanation of how claim construction would change the result. *See Jedi Techs.*, 2017 WL 3315279 at *6 (finding no factual dispute to preclude holding of patent-ineligibility on a motion to dismiss where patent holder "failed to identify any specific claims which, if scrutinized during claim construction, could impact the analysis").

Thus, even if eCredit were correct that claim construction is necessary in this case to decide

the § 101 issue, the Court could resolve this conflict by construing the claims in a manner most favorable to eCredit. Doing so, however, would not save the claims of the '353 Patent from claiming patent-ineligible subject matter. *See Inventor Holdings*, 123 F. Supp. 3d at 559 (invalidating patent under § 101 without claim construction because "the parties' arguments are not focused on specific claim limitations, but instead on the broader concepts of the claims").[3]

### C.   Patent ineligibility is an issue properly before this Court.

eCredit ignores the long litany of Supreme Court and Federal Circuit cases analyzing patent eligibility under § 101.[4] Indeed, the Federal Circuit has specifically rejected eCredit's argument, stating that "the defenses provided in the statute, § 282, include not only the conditions of patentability in §§ 102 and 103, but also those in § 101." *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1330 n.3 (Fed. Cir. 2012). Judge Bryson recently described pursuing the same argument based on the same blog article cited by eCredit as a "suicide mission." (Ex. 1, Claim Construction Hr'g Tr. at 37:13–14, *IDB Ventures, LLC, v. Charlotte Russe Holdings, Inc.*, 2:17-cv-0660-WCB-RSP (E.D. Tex., Oct. 17, 2018) (Bryson, J.) (sitting by designation).) eCredit cannot seriously argue that any dispute remains on this point after *Alice*.

## II.   CONCLUSION

For the foregoing reasons, Vyze respectfully requests that the Court dismiss eCredit's patent infringement claims based on the '353 Patent for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Vyze requests dismissal with prejudice.

---

[3] eCredit appears to fault Vyze for timely filing its motion, (Resp. at 15), but it is unclear how that is relevant to a determination that the focus of the '353 Patent as a fundamental economic concept under any claim construction.

[4] *See, e.g.*, *Graham v. John Deere Co.*, 383 U.S. 1, 12 (1966) (including § 101 among "conditions of patentability"); *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014); *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 543 F.3d 657, 661, 661 n.3 (Fed. Cir. 2008); *GoDaddy.com LLC v. RPost Commc'ns Ltd.*, No. CV-14-00126-PHX-JAT, 2016 WL 3165536, at *4 (D. Ariz. June 7, 2016), *aff'd*, 685 F. App'x 992 (Fed. Cir. 2017), cert. denied, 138 S. Ct. 568 (2017) (rejecting identical argument).

Dated: June 4, 2020         **FISH & RICHARDSON P.C.**

By: */s/ Ricardo J. Bonilla*
     Neil J. McNabnay
     mcnabnay@fr.com
     Texas Bar No. 24002583
     Ricardo J. Bonilla
     rbonilla@fr.com
     Texas Bar No. 24082704
     Andria Rae Crisler
     crisler@fr.com
     Texas Bar No. 24093792

**COUNSEL FOR DEFENDANT
VYZE, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 4, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Ricardo J. Bonilla*
Ricardo J. Bonilla

11